2014, 1532 and 1533. In this case, the trial court decided a case it never should have heard, found liability under a non-existent version of a changes clause, interpreted an interest clause to and relied upon testimony without even acknowledging that it was refuted by a failure to produce the contemporaneous documents. Can I ask this, if this goes back to the board, do you agree that the board can now hear it? Yes, Your Honor. So there's no untimeliness issue that would block the board from now hearing this piece? No, Your Honor. We're not asserting that and we're unaware of any at this time, Your Honor. Now, this court should remand with instructions to dismiss the complaint pursuant to 12b-6. Doing otherwise will leave a giant loophole for plaintiffs to avoid exhausting adequate and available administrative remedies that they contractually agree to. The disputes clause… Can you just clarify one factual thing? I should know this by now. But did the contracting officer say, I deem this denied or did some other government official like a lawyer say, you're Sufi, you may deem this denied? Did the contracting officer ever speak on this or not? Well, he spoke through the attorney, Your Honor, but it was the attorney, the email that's referenced that references the term deemed denial, which of course is not a term that's entirely appropriate with the context of this case because it's not a CDA case, but that email is from an Air Force attorney, Your Honor, not a contracting officer. Did it say, this case is denied or deemed denied, or does it say you may consider it? It uses the word consider, Your Honor. You may consider this case deemed denied. With regards to the denial, the reason that doesn't matter is because at any point under the ASPCA's rules, Sufi could have filed his claim with the contracting officer and the next day or the same day could have gone to the ASPCA and said, ASPCA, this is a simple claim, you've already decided it. Here's, I guess, what I want to get clear on. The only so-called exhaustion source that you have is the disputes clause, right? And there's no separate regulation or the like. So, and I understand the dispute clause, disputes clause says when the contracting officer issues a decision, that's final unless you go to the board. What I'm not sure about is where some other notion of exhaustion would come from when there isn't, in fact, a contract officer decision. That comes from the fact, Your Honor, that at any point under the board's rules, Sufi could have proceeded to the board after filing their claim. What they could have done is a large step from what they are required to do. Well, yes, Your Honor, but the administrative remedy must be viewed in the, its administrative remedy resides under the disputes clause. What Sufi's trying to do is say, my disputes, my, the disputes clause is a two-part administrative remedy and it's, you can divide those and if, based upon an alleged, or based upon an asserted material breach of the first part, I couldn't do the second part. But that's not the case at all here, Your Honor. I don't think they're saying you couldn't do the second part. They're saying they didn't have to do the second part. Well, and, but, in part, I mean, I don't know whether, whether they say this or not. This is why it actually, at this moment, matters to me whether there was a denial. If there was a denial, then I understand how the disputes clause actually, by its terms, says that's final unless you go to the board. If there's no denial, I don't understand what role the disputes clause has by its language. The, the role it has at that point, Your Honor, is that the under, in order to, in order for a disputes clause, to escape a disputes clause, to escape the effect of a disputes clause, the remedy has to be inadequate or unavailable. The disputes clause outlines an entirety of an administrative remedy. It has two parts. It has the contracting officer part and then it has the ASPCA appeal part. The entirety of that remedy must be inadequate or unavailable, Your Honor. You can't simply parse it and say, well, this part was inadequate or unavailable, so, therefore, I, I get to skip the second part. When, when they went to the Court of Federal Claims, did they treat the contracting officer as having denied the claim? Your Honor, I would have to review, uh, the record on that. I'm, for purposes of appeal, I'm not sure it matters, because the fact… Well, you understand why what I just said makes it, um, makes it seem to me that it matters. I, I think I'm following, Your Honor, the, the point would be that if they, if they… The disputes clause says, if there's a contracting officer decision, it's final unless you go to the board. If that's all it says, full stop, if that's the only source of authority for saying they have to go to the board, it, by its terms, it may be more than by its terms, if by its terms, it doesn't apply to a non-decision. Right, Your Honor. Uh… But it's important whether there's a decision, if you're just looking at the language of the decision. Right, Your Honor, and, and our, our, our, our position is that it was a decision, that they could take that and they could go to the board and say, see board, they say they're never going to do anything about it, and they say we can treat it as deemed denied, so we have our decision, we're within 90 days, here our case. Now again, our, our fallback position to that is, even without that, they could have gone immediately after filing their claim and gone to the ASPCA and said, ASPCA, we think, ASPCA, they should have decided this in two hours, they're taking too long, can you at least either order them to decide it, uh, within a certain amount of time, or we'd like you to hear it de novo. Um, and the de novo issue is, is important, uh, with regards… Under the facts of this case, who is it that, that gives finality to, to the process? Is it SUFI who can consider it to be deemed, deemed denial? Or is it the government who instructs, you may consider this to be, wasn't there discretion there that, that the government's given to, to SUFI to, to decide on its own what it's going to do, whether it can consider this to be denied or not? Yes, Your Honor. There's, I'm not going to sit in front of you and dispute that, that the, the government introduced some, introduced some ambiguity into the situation. However, we feel that ambiguity is completely resolved by the ASPCA's rules, and these rules are set forth, and they are well known to SUFI. It is not as if they were confused about what they could do, they had done it before, and the trial court recognized that they had done this before, uh, in their, in the related matter that this court has already decided. Um, and that's why we feel that no matter how you characterize the decision, you wind up in the same place, which is that the administrative remedy that was assigned by the deuce clause cannot be found, uh, certainly as a matter of law, inadequate or unavailable, and that is the only way that you get to skip, skip, uh, any portion of your, um, of your administrative remedy. Now, it, it, it's important to note that what the court did is it found that the failure to satisfy the first portion was a material breach, um, and it's, it's arguable whether or not a material breach, the concept of a material breach can be, instead of a material breach of a clause, not the contract, the clause, it's arguable whether that can even be, uh, even be found, but even assuming it can, there's only two circumstances, one of which is vital importance, and I've already talked about that. Uh, a decision in this case was not of vital importance because they could go to the ASBCA pursuant to the ASBCA's rules. Uh, the second circumstance would be the essence of the clause. Well, certainly the CO's decision in this case, although important, was not the essence of this clause because without the CO's decision, and even with the CO's decision, either the ASBCA, or what happened in this case, the court of federal claims, is going to review it de novo, so no matter what happens in the decision, we're gonna start at, at square one again. Uh, if the proper administrative remedy was, was, uh, followed, which in this case was the ASBCA. Um, excusal is improper when a contractor has not attempted the appeal portion of its remedy. Now, Sufi cites three excusal cases, those are Oliver, Universal-ESCO, uh, and HB-Zachary, for the idea that an available remedy can be deemed unavailable as a matter of law. Uh, these cases, in each of these cases, the remedy was actually unavailable, and if the court is fine with those cases, uh, I, I trust it will, it will see the same view. Similarly, with regard to exhaustion, that is improper without satisfying the appeal portion of an administrative remedy. Sufi makes a constructive exhaustion argument, uh, and that is wrong because it relies on three actual exhaustion cases, New York Shipbuilding, CJ Langenfelter, uh, and New Valley. None of these cases finds exhaustion before the second portion of the administrative remedy, uh, is satisfied. Now, uh, if not remanded with instructions to dismiss, this court should reverse, uh, because the trial court's award, uh, was made under the changes clause. Now, before the trial court, Sufi argued a breach theory, and it relied upon the disputes clause as demonstrating the foreseeability element. The trial court made its award under the changes clause. This was an unbriefed clause that had received no mention beyond the complaint. The court's assertion, uh, at Joint Appendix 42, that, quote, there is no genuine dispute that Sufi is entitled to its attorney's fees as an equitable adjustment under the changes clause is wrong. The clause is limited to very specific changes having to do with drawings, designs, method of shipment, place of delivery. And the trial court undoubtedly recognized, uh, these dispositive limitations, and it tried to escape them by omitting reference to them, and also, incredibly, omitting the word such from its quotation of Part B. The court cannot expand the scope of the changes clause, uh, by simply omitting, uh, portions of its terms. Now, Sufi argues that the trial court, quote, grounded its ruling in breach. Uh, this is wrong, as shown at JA-42, JA-44, and JA-47. It also argues that despite Count II explicitly requesting an equitable adjustment under the changes clause, what Sufi actually meant is that Count II was identical to its Count I claim. But there's simply no reason for Sufi to have had, uh, claims that were based upon, uh, the identical theory of recovery, and then also identical damages, uh, that's entirely inconsistent. Now, but even if Sufi were correct that its changes clause theory of entitlement were identical to its breach theory of entitlement, that would not change the multiple issues as to foreseeability that the trial court sidestepped by relying upon the changes clause. Uh, with that, I'll turn to, um, the interest. This court should vacate the trial court's award of interest, uh, should it reach it, and remand with instructions to award interest from the date of receipt of the claim of the PSA, of the partial settlement agreement. Paying interest is designed to make an entity whole for the time value of money. It is not a penalty. The partial settlement agreement provides two alternative time periods from which interest may run, the date of receipt of the claim, or the date damages are actually incurred, and that language can be found in the joint appendix at 1980. The damages Sufi seeks, hourly attorney charges, are not damages that are actually incurred under the partial settlement agreement because Sufi has a contingent fee arrangement. It's an agreement not to incur fees. Thus, interest runs from the date of the claim. And so what, why does, why does that make sense as a logical matter? I mean, they incurred an obligation, say if you value the obligation, you might want to incur the liability of it's never maturing, but that doesn't turn it into zero. Yes, your honor, I, I mean, I, I, they have, they're losing the time value of money on that obligation, say it's, you know, it's, uh, you know, maybe they have a 50% chance of winning. So it's 50% of the face value of, of the obligation they just incurred to, to their attorneys. I, I, I'm trying to follow your honor. I think your, your point is that, um, that, that I think, I think the foundation of your argument, your honor, I'm sorry. The fact that it's contingent doesn't mean there was no, um, net diminution in the assets of the company when their lawyers did work for them. I, I, what I, what I understand you to be saying, your honor, is that, that the fact that it was a contingency arrangement does not change the fact that it was an obligation. And I would absolutely agree with you there. Uh, where I, where I part ways is that, uh, an obligation, uh, does not meet the language of damages that are actually incurred. Uh, that is where, that is where I feel, uh, like the, the, the road parts. Um, and I think that, so the contingency language you're talking about is really neither here nor there. It could have been in fact a certain obligation, just not due yet. I think that, yes, your honor, I, I, I, I, I think that's right. I think that, uh, to the extent that, um, to the, yes, I think that's, I, I, I think that's correct, your honor. Um. So if there's an obligation that was incurred, why shouldn't that be at the time that the work was done? And if that's the case, why shouldn't the calculation of interest go back to that point in time when the work was, was undertaken? The reason it shouldn't be incurred in this, in, in this situation, your honor, is because the language that they're relying upon is damages that are actually incurred. It has to be actually incurred, damages that are actually incurred under the partial settlement agreement. Uh, and we don't, and the partial settlement agreement, uh, was, because it was for interest does not contemplate SUFI simply incurring an obligation and then the government gets to pay interest for that. Um, and I think that the trial court's analysis of that and our discussion of the trial court's analysis of that in our brief, uh, further, uh, bears that out with regards to how the United Partition Systems and the Phillips cases that the court relies upon, uh, those aren't, uh, determining an obligation for purposes of paying interest because EJIA only pays interest in very narrow circumstances. Um, the last thing I'll say, uh, actually I'll just say that with regards to rates, the docs that SUFI admits exist, that SUFI paid standard rates, uh, if, if those documents exist, then SUFI would have presented them with that. I'll reserve the remainder of my time. Thank you. Thank you, Mr. Hoffman. We'll give you your two minutes back. Thank you. Uh, Mr. McLaughlin, and you've got some cross field time and whether you use it now or save it for later is up to you. And also whether there'll be anything for you to respond to, which is now unknown. Thank you, Your Honor. Uh, may it please the court. My name's Brian Tully McLaughlin. I represent SUFI Network Services. Uh, the court of federal claims here made only one reversible error and that is the subject of our cross appeal. But I'm going to turn first to the government's appeal arguments. Now, the court today has rightly clarified that, uh, the government here is not challenging that the contracting officer breached his implied obligation to render a final decision and do so in a reasonable amount of time. That is not an issue. The only issue is whether or not SUFI in light of that breach was required to still proceed to the board of contract appeals or whether it could elect to file suit in the court of federal claims as it did. Did the contracting officer deny your claim? The contracting officer did not deny the claim. The contracting officer never addressed the claim. What's this deemed denial business? The deemed denial, uh, is a, uh, as I think, uh, my counterpart acknowledged a one line email from an agency attorney that said, do you make... Do you have a citation for that? I do, uh, JA 73. Uh, it was, uh, we, we, uh, paraphrased that email in the complaint. Oh, but the email itself is not in there. It's not. However, at JA 105, the government admitted that, uh, allegation of the complaint. So that's the factual basis there. Uh, the government... Uh, uh, a denial. Why shouldn't we take that as a denial coming from the contracting officer? You have the attorney for the agency that's responding to a specific question regarding the procedure and the timing of the procedure and when a decision is to be expected and the lawyer says, forget it. You're not going to hear anything. It's deemed denial. Consider deemed denial. And, uh, is it that final, is it that a decision from the contracting officer? No, what that is, if anything, is a refusal to issue a final decision, Your Honor, and New York Shipbuilding, uh, which we cited in our brief speaks to that point in New York Shipbuilding, there actually was a decision from a contracting officer, but it was not the correct one. And the court there held that that decision was worth nothing. Here, we have an agency attorney who is not the person with the authority to issue a decision, giving out an email that says you may consider it deemed denied. That's not a final decision that does not meet the contracting officer's obligation. Uh, and, uh, the government doesn't offer any, any support for the argument that that is a final decision. The only thing that that email did was tell Sufi that it would never get a final decision. It would never get any reason. So in the landscape before the CDA, are you saying that only the contracting officer could deny a claim? That's correct. Uh, under the dispute clause. For purposes of appeal. Yes. For an appeal to the administrative board, uh, the requirement was for the contracting officer to issue a final decision. And the cases that we rely on in our brief are very clear on that, that that step in the process, the contracting officer's obligation to render a final decision is critical. Um. And what's your authority in, again, in, in the, in the pre, uh, CDA landscape that only the contracting officer could act on behalf of the agency with respect to claims? Uh, uh, the cases we cite, we, uh, we have HP Zachary where there's a contracting officer refusing to issue a decision. Again, we have New York ship building where there was another officer who issued a decision, but the court found that that was a nullity. Uh, again, here we had nothing. Um. Did the court of federal claims here actually find a breach? It ruled on this only in denying the government's motion to dismiss, right? The court, uh, found that there was a material breach of, uh, the contracting officer's obligation to, under the disputes clause, to issue a final decision. Uh, following on that point and yes, tell me where that is, please. I believe that that is that, uh, I'll have to ask for a second. I think it's Jay. May I continue while he's finding it? Thank you. Um, related to this, the government, uh, in reply, uh, provides another argument that because the board current, the current board rules, uh, uh, have a provision saying that you may take a deemed denial, uh, as an appeal to the board, that that was what Sufi was required to do, but that does not make it a required next step in the light of, uh, uh, the fact that this contracting officer did not issue a decision. In fact, long before there was any such provision of the board rules, uh, the boards were hearing deemed denial cases. And let me just give you one example, PA Rivera and Sons, ASPCA number 15724 from 1970, citing cases dating back to the 1950s in which it was hearing deemed denials. Uh, and at that same time, the court of claims was, was excusing contractors from appealing to the boards where it had not gotten a contracting officer's decision. So the fact that there's the availability of a deemed denial does not make it required. Uh, again, the government makes light of this, that we, that we briefed, that we had the choice in light of there being no contracting officer's decision that we had the choice to appeal to the board or to take our suit in the court. Uh, but that has been rejected. And again, the cases we rely on in our brief go to that point, but let me provide just two others. One is Manpower Inc of Tidewater, 513F3rd, 1396 at 1398. There, there was an unreasonable delay by the contracting officer to issue a final decision. And the government argued that the contractor's sole remedy was to appeal to the board. The court rejected that and expressly stated, quote, an established line of decisions of this court has held that if there is an unreasonable delay in the administrative process, the government has thereby breached its implied obligation to resolve disputes in a reasonable time. And the contractor can then sue directly in this court if it wishes to do so. To insist that the contractor must seek his relief from the board of contract appeals would run counter to this settled principle, end quote. And one other case, which I won't cite at length, but Maxon Dress Court, 115F Sup, 439 at 443. Again, there it was held that a failure to appeal to the board when the contracting officer has not issued a final decision, quote, is not a bar, close quote, to a court action. And, uh, and this is consistent with, uh, the law when you have a breach. Here, as New York Shipbuilding held, when a contracting officer fails to render a timely decision, the defendant, the government, loses its right to insist upon administrative findings and administrative decision. In fact, the New York Shipbuilding held that without a contracting officer's decision, there's nothing to appeal to the board. Now, let me try to move on to the next. Do you deny that in fact you could have appealed this to the board? We don't deny that. What, what we have argued is that we had the choice in light, faced with this breach by the contracting officer, we could elect either option. We elected to file suit. Now, as to the changes argument that government has discussed, uh, as we explained in our brief, uh, it was appropriate to grant the same relief, whether under a changes theory or under a briefs theory. And here, the FAR and the common law are consistent that there is liability for the damages we sought when there, the fees at issue are not for prosecution, but for administration or performance of the contract. The government spends its entire argument focusing on whether or not the court properly analyzes under a changes clause, but it never disputes the basic fact that these damages for attorney's fees were a direct and foreseeable consequence of the underlying breaches that had already been held at, uh, by the board. In fact, at JA 47, uh, the court of federal claims stated that attorney fees are compensable if they're a direct and foreseeable consequence of the breach and said, and stated there that they were in this case. Uh, the court here may affirm the court below on any, uh, on anything in the ground, even the one not chosen by the court of federal claims. Does that, does that ground or not, um, involve a factual finding that was, was, was not made? Is there some, to find that this was a natural and foreseeable consequence of the, the breach, the major breach that, uh, interference with the performance of the contract that led to, to a termination, um, wouldn't the trier of fact here have to make that finding, but having chosen to rely on a different ground, um, the trier of fact did not do so? Uh, the court here, uh, uh, did make that finding in its discussion. It's simply, uh, as the government argued, grounded its decision saying that it was based only on the changes clause, but it did make a finding that these costs were, again, that's at JA 47, uh, at the end of the court's opinion on that. And here relevant to that is that we have an issue preclusion argument, your honors, uh, which forecloses the government's argument here. The board had already in a related docket, uh, and awarded Sufi, uh, it's, uh, claim preparation costs for work done by Sufi employees and a claims consultant, and it analyzed them under Bill's, the Bill Strong case and found that they were compensable because they were not incurred for litigation purposes. This also include work like shutdown work. That is the same work that Sufi's attorneys engaged in and in a collaboration with that claims consultant and with that employee. So it's the identical issue. And so that, uh, the government is precluded from arguing against liability here, whether under breach or under a change of theory. Uh, in terms of the changes clause, we pointed out in our brief that there is an alternate version of the changes clause. It's referenced and incorporated into the contract, uh, at JA 757. It's for services. That is what, uh, that is how, uh, as a change, this, this work would flow. There was, uh, breaches, underlying breaches. And as a result of those, uh, the, the contractor Sufi had to do work to put its claims before the contracting officer to attempt to negotiate them. And that's what Sufi's attorneys did just as its employees and just as its consultant did. I'm sorry to run a little short on time. So I'd like to mention very quickly on interest that, uh, the government, uh, in its reply, uh, takes light of the fact that the partial settlement agreement uses the word or the term actually incurred instead of just incurred. And the government attempts to distinguish on that, but that is not a distinction. It doesn't change the analysis or the outcome here. Uh, and there's case law to that effect. The Eighth Circuit itself has analyzed in a separate type of statute, uh, whether or not using the, inserting the term actually in front of the word incurred makes any difference and came out and ruled that it didn't. In that case is SEC v. ComServe 908 F2nd 1407 at 1414 note nine from the Eighth Circuit. Uh, the Court of Federal Claims came to the same conclusion in a similar case Persol v. U.S. 52 Fed Claims 667 at 674-75. Uh, on the rates are just very briefly addressed. What is the, um, theory under which it makes sense for this contingent obligation incurred by, um, SUFI when you all started doing work, um, is would have been understood by the parties in signing this preliminary settle agreement or partial settlement agreement to, to, um, have, to have been the starting date for the, the interest. It makes sense. It makes sense because as your Honor, uh, pointed out earlier, uh, the case law, as we cited in our brief, it's clear that when there, uh, when you have a contingency, the fact that there's an attorney client relationship, that is what is, uh, important in finding that there's an obligation that is incurred. So it's the fact of the relationship, uh, and not the payment expressly, the obligation to pay is incurred. And in contingency cases, the courts have held. And I'm, I guess I'm thinking in terms of, um, interest is to make whole. Explain how your view fits the interest in making whole. It fits here because, uh, SUFI was undertaking an obligation to pay. Uh, it had, uh, an economic harm in having to wait, uh, to get its damages from, uh, the board or the court. And, but it had undertaken an obligation to pay its attorneys those fees. So, and again, here we have, uh, fees that we are, um, that we're claiming under the Lodestar method, under which we have to look to the individual time entries and the date of performance. Not, we aren't able to recover, uh, under the case law under the contingent, or we're not seeking to recover, uh, under our contingency arrangement, which could lead to a greater award. Uh, I'm, should I address my, uh, cross appeal right now, your Honor? Uh, take 30 seconds to address your cross appeal. Okay. Thank you. And then if there's any response to it, I'll give you two minutes to respond. I appreciate that. Your Honor, uh, I just, uh, uh, your Honor's Lori in Toronto, uh, may be aware of this already, but I would like to update, uh, in, in our argument. We had an issue preclusion argument regarding overpaying the overhead and profit being awarded by the Court of Federal Claims. Uh, this court, uh, at 755 F 3rd, 1305 at 1324, uh, affirmed the Court of Federal Claims holding that profit should be applied to direct costs that Sufi had incurred, uh, although it also, uh, affirmed, found that there was no abuse of discretion by the board in denying overhead itself, uh, because there was a failure of proof in that related docket. Now here, what that means is that, uh, uh, the court, this matter should be remanded for the court to apply a reasonable, set a reasonable profit rate and to consider the evidence that we submitted, uh, for overhead. Here, we submitted additional evidence that was not available, that was not submitted before the board, uh, and the court needs to consider that to set overhead as well. Thank you. Thank you, Mr. Hoffman. Mr. Hoffman, uh, I'll give you two minutes. I'll give you two minutes. Yes, Your Honor. Um, with regards to, uh, the issue preclusion, the trial court considered both parties' issue preclusion arguments, uh, and found them wanting, uh, other than that, uh, the issue with the Alt-1 version of the changes clause, it's important to note that, uh, the court didn't cite the Alt-1 versions of the changes clause, uh, but even if it did, it's unavailable because Sufi has conceded that it provided supplies in this contract and that concession is made in joint appendix of 73, uh, additionally, uh, it's important for the court to know that the Alt-1 changes clause by itself is not going to get Sufi there, uh, as they, uh, set forth in their response at page 14, uh, what they, what they described as this hybrid form of recovery where you take the disputes clause and the changes clause and somehow you mix it all together and that wound winds up making attorney claim preparation work under the contract. Uh, and that's simply... Can I take you right back to the beginning? Yes, Your Honor. Of this, um, the disputes clause and whether the case was lost in the court. Um, in denying your motion to dismiss at JA 62, the court says, I agree there was a breach of the disputes clause because there was no contracting officer decision. Um, do I take that as a finding that I, that we can rely on? There was a motion to dismiss. I don't know, you know, did you raise that later? Do you deny that there was a breach? Your Honor, we, we certainly, we certainly argue... Do you deny that there was a breach? We argue that, that what the, what the attorney provided, what satisfies the final decision and that that was the decision that Sufi could, could carry forth with its administrative remedy based upon that.  The court of federal claims judge said in denying the motion to dismiss, there was a breach and therefore no dismiss, no, I mean, no, no dismissal. Now, can't make findings obviously on the motion to dismiss findings of fact. Did you renew that issue later in the proceeding? Um, I, I think we did, Your Honor. I'm, I'm, I'm not, I'm not sure. I would have to, I would have to look at that. Um, I mean, we certainly didn't, uh, seek reconsideration on it or anything like that. Um, but we maintained throughout. I mean, we certainly didn't go back on our initial position that, because we wouldn't have had any reason to visit it, that that was a final decision. Um, and, and I think we've, we've established that clearly in the record and through our briefs, uh, where we've consistently distinguished cases based on the existence of a final decision. A lot of the cases that they say, they say there is no final decision. We distinguish on numerous bases, but that's one that we consistently maintain that there was a decision here. Thank you, Your Honor. Mr. McLaughlin, I think there's nothing to respond to on the cross-appeal. My, my only request would be, uh, Your Honor asked for a page cite on one, one question. May I provide that? All right. Uh, Your Honor asked if the, if the court made a finding of material breach by the contracting officer in his decision, 62 and 63. Thank you, Mr. McLaughlin. The case will be taken under revised.